DILLON, Respondent v. McMANUS, Appellant.

St. Louis Court of Appeals, November 27, 1906.

1. **PRINCIPAL AND AGENT: Undisclosed Principal: Evidence: Instruction.** In an action against an agent to recover an attorney's fee for services rendered the principal, an instruction telling the jury that the ownership of the property concerning which the service was rendered was immaterial if the defendant did not disclose such ownership at the time he consulted the plaintiff, was proper.

2. ———: ———: ———. And in such case the fact that the agent intended his principal and not himself should be charged with the services was no defense to plaintiff's action unless such intention was communicated by the agent to him.

Dillon v. McManus.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster, Judge.*

AFFIRMED.

*R. M. Nichols* for appellant.

(1) The sole question in the case was to whom credit was given by the plaintiff, whether to Camilla S. Mc-Manus or to Thomas Ward McManus. Bearing on this question the testimony of plaintiff showed that he charged the bill in the first instance against both; that he knew the property against which the special taxbill was assessed "belonged to the McManuses." Defendant testified that he told plaintiff at the inception that the services were to be performed for Camilla S. McManus. (a) As to whom credit was given was a question for the jury. Hoover v. Pitcher, 13 Mo. 191; Story on Agency (8 Ed.), secs. 279, 288. (b) Both principal and agent are not liable. Provonchere v. Reifess, 62 Mo. App. 50; Story on Agency (8 Ed.), sec. 296. (c) Ownership of the property was an evidential fact for the jury in determining to whom credit was given. (2) Independent evidential facts under this instruction are made dependent so far as to be considered by the jury, one upon the other. These independent facts are singled out and commented upon and one fact is withdrawn from consideration of the jury as "immaterial," unless they find the other fact. This is clearly pernicious. Woolen Mills v. Meyer, 43 Mo. App. 124; Robards v. Murphy, 75 Mo. App. 39; Boyce v. Nolan, 96 Mo. 85; McQuillin on Instructions, sec. 121, p. 93. (3) The amendment of defendant's instruction so as to require the jury to find that the plaintiff had reasonable grounds to believe that defendant did not intend to become liable before they could find for the defendant, is entirely out of line with the law, because if credit is given to an agent the creditor may hold him regardless of whether he intended to be

bound and regardless of whether the creditor had reasonable grounds to believe that defendant did not intend to be bound. Story on Agency (8 Ed.), secs. 261, 263, 288; Huston v. Tyler, 140 Mo. 253.

*John Dillon* for respondent.

BLAND, P. J.—The action originated in a justice's court by plaintiff filing therein the following account:

"Thomas W. McManus,
　　　　To Daniel Dillon, Dr.
October 30, 1904. To consultation and advice as to the validity of amended or second special tax bills against property on the south side of West Pine boulevard, between Vandeventer and Sarah street, in the city of St. Louis, for the reconstruction of said West Pine boulevard, and interest on same at six per cent per annum since October 30, 1904, . . . . . . . . $50."

After judgment by default in the justice's court, the cause was appealed by defendant to the circuit court, where on a trial *de novo* plaintiff recovered a judgment for fifty dollars. Plaintiff, a practicing lawyer, in the city of St. Louis, testified, in substance, that defendant, who was a stranger to him at the time, called at his office and consulted him in regard to the validity of certain corrected special taxbills, which had been issued by the city authorities of the city of St. Louis against property on and near Pine street. These bills accrued on account of the reconstruction of said Pine street. Prior to the time defendant called, plaintiff had investigated the validity of these bills and advised defendant they were valid. As defendant was about to leave the office, plaintiff told him his charge for the advice he had given was $50, and asked if he should send him a bill. Defendant indicated he thought the charge was too high and abruptly left the office. Plaintiff testified he knew, in a

general way, the McManus family owned a large amount of real property chargeable with special taxbills for the reconstruction of Pine Street, but did not know the particulars of the title, and that some time after defendant called at his office he consulted the city directory and saw the McManus residence was noted as the residence of Camilla S. McManus, the mother of defendant, and afterwards sent bills for his fee to defendant, made out against both defendant and his mother. No attention was paid to these duns and plaintiff brought this suit to recover his fee.

Defendant testified he went to plaintiff's office, introduced himself, and told him he had come at the request of his mother to get his opinion in respect to the legality of the special taxbills, and that plaintiff advised the payment of the bills; that he (defendant) then said: "Judge, how much do I owe you—my mother—owe you for your services? He says, 'fifty;' I says, 'fifty what?' He says 'fifty dollars.' I arose and went to the door. He says 'do you think that is too much?' I says 'yes.' 'Well,' he says, 'my services are very valuable, save you lots of money.' I says, 'Well, I'll tell my mother, she will send you a check or bring one.'" Defendant testified that his mother was dead and her estate entirely solvent. The title to the property against which the taxbills were made out is shown to have been in Mrs. McManus.

The court gave the following instruction for plaintiff:

"If the jury believe from the evidence that when the defendant consulted plaintiff in regard to the special taxbills mentioned in evidence he did not say that he was acting for Camilla S. McManus, and did not say that she was the owner of the property against which the special taxbills were issued, then it is immaterial whether said Camilla owned said property or not.

"The court instructs the jury that it was immaterial

whether Camilla S. McManus was the owner of the property mentioned in the evidence and covered by the deed read in evidence if, when defendant consulted plaintiff in regard to the said taxbill against said property, the fact was not mentioned that Camilla S. McManus owned the said property and that plaintiff did not know at the time that she owned said property."

The defendant asked the following instruction:

"The court instructs the jury that if they believe from the evidence that when defendant, Thomas Ward McManus sought legal advice of plaintiff Daniel Dillon, the said defendant told the said plaintiff that he was acting in the matter for Mrs. Camilla S. McManus, and as her agent, and if the jury further find and believe from the evidence that Mrs. Camilla S. McManus was financially able to pay plaintiff for any services rendered to her in the matter by the plaintiff, and you further find and believe from the evidence that the defendant did not intend that plaintiff should charge him for the value of his services rendered, then you must find a verdict for the defendant."

Which the court gave after modifying by inserting the following:

"That plaintiff had reasonable grounds to believe that defendant did not so intend,"
after the words "did not intend that plaintiff should charge him for the value of the services rendered."

Defendant contends that plaintiff's instruction is erroneous in that it singles out the question of ownership of the property (against which the taxbills had been issued) and tells the jury that such ownership was immaterial, if at the time defendant consulted plaintiff he did not disclose its ownership. The ownership of the property was not an issue in the case; it was admissible for two purposes, viz., to show that defendant's mother and not defendant was benefited by the legal services of plaintiff and as persuasive evidence that defend-

dant represented his mother in consulting Judge Dillon, therefore, if, as plaintiff testified, he did not know to which of the McManus family the property belonged, and if the fact that it belonged to Mrs. McManus was not disclosed to him by defendant, title in Mrs. McManus was no defense to plaintiff's right of action, and it was this idea which the instruction intended to convey to the jury. The value of this piece of evidence, or its want of value, as bearing on plaintiff's right to recover of defendant might have been more elaborately and definitely stated in the instruction. But we do not think the instruction as given had any tendency to confuse the jury or that the jury was misled by it.

2. The modification of defendant's instruction as made by the court was proper. As asked it would have warranted the jury to find for defendant if they believed from the evidence that at the time he consulted Judge Dillon he had a secret intention the charge for the services should be made against his mother and not against him; and it was proper to modify the instruction by telling the jury that this intention, if entertained, was no defense unless communicated to plaintiff. Plaintiff made out a prime facie case for the jury, both as to his right to recover and as to the value of his professional services. Defendant squarely contradicted plaintiff's evidence in respect to his right to recover of him at all. The jury settled this disputed question of fact in plaintiff's favor and there is nothing in the record warranting us to interfere with the verdict. The judgment is therefore affirmed. All concur.